In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-3289

MARGARET M. GOOD, as Liquidation
Agent of the Liquidation Trust of
HEARTLAND STEEL, INC.,

*Plaintiff-Appellee,*

*v.*

VOEST-ALPINE INDUSTRIES, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:03-CV-0476 SEB-VSS—**Sarah Evans Barker,** *Judge.*

ARGUED APRIL 7, 2004—DECIDED FEBRUARY 22, 2005

Before FLAUM, *Chief Judge,* and WOOD and WILLIAMS,
*Circuit Judges.*

WOOD, *Circuit Judge.* This case begins and ends with our
lack of appellate jurisdiction, though the path to that
conclusion is not as straightforward as one might wish.
After Heartland Steel, Inc., filed for bankruptcy, Voest-
Alpine Industries, Inc., submitted a proof of claim seek-
ing payment for services that it had provided to Heart-
land. Following some procedural finagling, Heartland's
trustee in bankruptcy sued Voest in Indiana state court
alleging breach of contract and constructive fraud in
relation to the provision of those services. Voest promptly

removed the case to the bankruptcy court. At the trustee's motion, the district court withdrew the reference from the bankruptcy court and remanded the trustee's claims to state court. Voest asks that we reverse the district court, offering a clever but ultimately unpersuasive justification for why the jurisdictional bars imposed by 28 U.S.C. §§ 1452(b) and 1291 do not preclude our review of either aspect of the court's order. Because we conclude that § 1452(b) and § 1291 govern, we dismiss Voest's appeal for lack of jurisdiction.

**I**

Heartland set out to become the largest independent flat-rolled steel processor in the United States, with a target capacity of 1.1 million tons per year. To achieve this goal, Heartland entered into a contract with Kvaerner U.S., Inc., which did business under the name Kvaerner Metals, under which the latter would provide equipment for Heartland's facility in Terre Haute, Indiana. Kvaerner also contracted with Heartland to provide software for an information system known as "Level 3," which was intended to coordinate the automated production information from each of Heartland's steel processing lines. Voest is the successor-in-interest to Kvaerner with respect to these contractual obligations.

Heartland voluntarily filed for bankruptcy under Chapter 11 on January 24, 2001. Voest subsequently filed a proof of claim in the amount of $20,471,242.94, plus interest and attorneys' fees. According to Voest, approximately $10.2 million of that claim was secured by mechanics' liens and the remainder was unsecured. On November 20, 2001, the bankruptcy court entered an order confirming Heartland's Chapter 11 plan. Almost four months later, on March 11, 2002, Heartland's trustee in bankruptcy, Margaret Good, filed an objection to Voest's assertion that valid mechanics'

liens secured the $10.2 million claim. Voest filed a motion to strike the objection, and on July 30, 2002, the bankruptcy court issued an order rejecting Good's objection as untimely and further denying her request to extend the deadline to file additional objections. The district court reversed in part, finding that Good's objection to the secured status of Voest's claim was timely filed, but affirming the bankruptcy court's denial of her motion for an extension of time to file other objections.

On January 17, 2003, six months after the bankruptcy court's order, Good filed a complaint against Voest in state court in Indiana, alleging that "Kvaerner and/or Voest was unable to cause the software system to operate according to Heartland's performance requirements and, as a direct and foreseeable consequence, Heartland lost its major customers and its funding and was forced to file for bankruptcy." On February 21, 2003, Voest removed the case to the bankruptcy court pursuant to 28 U.S.C. § 1452(a). Shortly thereafter, Good filed two motions in district court. First, Good moved to withdraw the reference on the grounds that the state court action was non-core and that "Plaintiff has requested a jury trial, the bankruptcy court cannot hold a jury trial without the parties' consent, and Plaintiff has not and will not provide such consent." Second, Good asked the district court either to abstain or to remand the case to state court. She argued that the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2) were satisfied or, in the alternative, that the district court should exercise its discretion to abstain under 28 U.S.C. § 1334(c)(1) or to remand under 28 U.S.C. § 1452(b).

The district court granted both of Good's motions. The court took note of the fact that, under 28 U.S.C. § 157(d), a "district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party,

for cause shown." Although the court found that the bankruptcy court had jurisdiction over Good's state-law claim because it was "related to a case under title 11," it nonetheless concluded that Good's "right to a jury trial dictates that the reference should be withdrawn." Turning to Good's motion to abstain or to remand, the court observed that, under 28 U.S.C. § 1452(b), a district court to which a state "claim or cause of action is removed may remand such claim or cause of action on any equitable ground." The court concluded that "[b]ecause the case at bar involves claims based entirely on state law, and because the claims fall within 'related to' jurisdiction, remand will have minimal effects on the administration of the bankruptcy. The state court can adequately address the state law issues based on its expertise." On this basis, it remanded the case to state court. After unsuccessfully moving for the district court to certify its order withdrawing the reference for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), Voest appealed directly to this court, asking that we reverse the district court's order.

## II

There are really two orders of the district court that Voest would like this court to consider: first, the order under § 157(d) withdrawing the reference to the bankruptcy court, and second, the order under § 1452(b) remanding the entire proceeding to the state court. Good argues that § 1452(b) bars our review of both of these orders. Even if her position is correct in the end, however, we find it useful to consider the orders separately. We look first at the district court's decision to withdraw the reference to the bankruptcy court, and then at the order of remand.

**A**

According to Good, § 1452(b) bars our review of both the district court's withdrawal of the reference and its remand of the case to state court. Voest counters that under the Supreme Court's decision in *City of Waco v. United States Fidelity & Guar. Co.*, 293 U.S. 140 (1934), the withdrawal of the reference is a distinct order that was entered before the order of remand, and as such, nothing in § 1452(b) precludes this court from reviewing it. Perhaps not, Good responds, but even if Voest can satisfy § 1452(b), it still needs to show that it is appealing either from a final judgment, under 28 U.S.C. § 1291, or from an interlocutory order that is otherwise appealable. As the parties have done, we consider first § 1452(b), which Good claims is a specific statutory ban on appellate review here, and then we turn to the more general constraints imposed by § 1291.

In *Waco*, the Supreme Court indicated that appellate review of a district court order that precedes a remand order may be appropriate in some circumstances, even if the remand order itself is unreviewable. *Id.* at 143. The case began when Curtis Boggs sued contractor Combs & Glade and the City of Waco in state court for damages from a collision. *Id.* at 141. The city filed a cross-action against Fidelity, asserting that it was liable as a surety on Combs & Glade's bond. *Id.* Fidelity removed to federal court based on diversity jurisdiction. *Id.* The district court entered a single decree consisting of three orders: first, it denied Boggs's motion to remand because a separable controversy existed between the city and Fidelity; second, it found Fidelity an unnecessary and improper party and therefore dismissed the cross-complaint; and third, since the remaining parties were not diverse, it found that it lacked jurisdiction and remanded to state court. *Id.* at 142. The city appealed the order dismissing Fidelity. *Id.* The Fifth Circuit dismissed the appeal, finding that "as no appeal lies from an order of remand, . . . the action of [the district] court in

dismissing the city's cross-action was moot, and its propriety could not be reviewed." *Id.* at 142-43. The Supreme Court reversed, stating:

> True, no appeal lies from the order of remand; but in logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause. Indisputably this order is the subject of an appeal; and, if not reversed or set aside, is conclusive upon the petitioner. We are of opinion that the petitioner was entitled to have the Circuit Court of Appeals determine whether the dismissal of its cross-action against the Fidelity Company was proper.

*Id.* at 143. The Court stressed, however, that its reversal of the dismissal order "cannot affect the order of remand, but it will at least, if the dismissal of the petitioner's complaint was erroneous, remit the entire controversy, with Fidelity still a party, to the state court for such further proceedings as may be in accordance with law." *Id.* at 143-44.

A number of courts, including this court, have relied on *Waco* as a basis for reviewing district court decisions that "in logic and in fact" preceded remand orders. For example, in *J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267 (7th Cir. 1990), parents sued the school district in state court, stating claims under state law and 42 U.S.C. § 1983. *Id.* at 268. The school district removed to federal court, where it successfully moved to dismiss the § 1983 claim and some of the state-law claims. *Id.* Left only with pendent state claims, the court remanded to state court. *Id.* at 268. On appeal, we found that "we ha[d] jurisdiction to review both of the district court's orders," which we "separately characterized as a dismissal order and a remand order," but we also noted that "our jurisdiction [was] not so self-evident that we [could] dispense with a tedious discussion." *Id.* at 269. Citing *Waco*, we held that our jurisdiction to review the court's dismissal order arose under an "exception to the bar

against appellate review of remand orders." *Id.* at 271. "This rule," we explained, "provides appellate review, where it might otherwise not be available, to a party adversely affected by a district court's substantive decision." *Id.*

The question here is whether the *Waco* doctrine permits us to review the district court's order withdrawing the reference. Good maintains that the answer is no, because the *Waco* doctrine elaborates the general system of removal and remand governed by 28 U.S.C. § 1447. But the Supreme Court rejected the argument that there is any distinction between the limits on reviewability imposed by the general removal statutes and the limits in § 1452 in *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). It held there that:

> If an order remands a bankruptcy case to state court because of a timely raised defect in removal procedure or lack of subject-matter jurisdiction, then a court of appeals lacks jurisdiction to review that order under § 1447(d), regardless of whether the case was removed under § 1441(a) or § 1452(a).

516 U.S. at 129. We take this to mean that the other qualifications on reviewability that have developed in the line of cases beginning with *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), also apply to § 1452 cases. Thus, under *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), where the district court dismissed all federal claims and remanded the remaining pendent claims, appellate review of the dismissal was authorized. Similarly, when a district court decides to abstain from exercising its jurisdiction and then remands a case to state court, appellate review of the abstention decision is possible under § 1291. See *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996).

Courts have continued to rely on the *Waco* decision to identify which orders are sufficiently distinct from the order

of removal to be entitled to appellate review, assuming that either a final judgment or an authorized interlocutory appeal is present. See *Allen v. Ferguson*, 791 F.2d 611, 614 (7th Cir. 1986) (finding "jurisdiction to consider the propriety of the district court's order" dismissing a party under "the reasoning of *Waco* and its progeny," even though § 1447(d) barred appellate review of its subsequent remand order); see also *Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95, 99 (1st Cir. 2001) (citing *Waco* in support of the proposition that "Section 1447(d) does not allow district courts to insulate separate and severable concurrent orders from review merely by attaching those orders to a remand order"); *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1285-86 (11th Cir. 1999) ("Section 1447(d) does not prevent us from reviewing the district court's order dismissing [the defendants' third-party complaints], even though it was made at the same time as the order of remand, because of the limitation on section 1447(d) recognized in *City of Waco*."); *Carr v. Am. Red Cross*, 17 F.3d 671, 675 (3d Cir. 1994) (concluding that the district court's order dismissing a party "is separable from the subsequent order of remand [and] [t]herefore, appellate review of the dismissal order is not barred by 28 U.S.C. § 1447(d)").

According to Good, this line of cases is distinguishable from the present case, which involves an order withdrawing the district court's reference to the bankruptcy court, rather than something like an order dismissing a claim or party. We do not find that distinction to be persuasive. In fact, we would not break new ground in relying on *Waco* to review a district court order that preceded a remand based on § 1452(b). In *In re Adams*, 809 F.2d 1187 (5th Cir. 1987), the Fifth Circuit found that it had jurisdiction over such an order. After Adams's creditor filed suit against him in state court, he filed for bankruptcy and removed the case to the district court, which in

turn sent it to the bankruptcy court. *Id.* at 1188. The creditor voluntarily dismissed its state action, but then had a change of heart and successfully moved for the bankruptcy court to "reinstate" the lawsuit. *Id.* Adams sought relief from the district court, which dismissed his appeal and remanded to state court. *Id.* The Fifth Circuit acknowledged that the remand decision "as such is not reviewable" under § 1452(b), but observed that "unless this court reviews the dismissal of the appeal by the district court, that action is functionally non-reviewable." *Id.* at 1188-89. Relying on *Waco*, the court held that "[t]he district court's order, to the extent it dismissed the appeal from the bankruptcy court, is consequently reviewable." *Id.* (We have no need here to consider whether the Fifth Circuit correctly concluded that it had appellate jurisdiction under 28 U.S.C. § 158(d) to review the district court's dismissal of the appeal from the bankruptcy court's order reinstating a claim; it is enough to say that the order withdrawing the reference before us raises different concerns, as we discuss below.)

It is true that courts have generally limited their application of *Waco* to orders dismissing parties or claims. See, *e.g.*, *Aquamar*, 179 F.3d at 1286-87 (dismissing a claim); *Carr*, 17 F.3d at 674 (dismissing a party); *J.O.*, 909 F.2d at 268 (dismissing a claim); *Allen*, 791 F.2d at 613 (dismissing a party); see also *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 321 (4th Cir. 1993) ("[M]ost decisions applying *City of Waco* have involved orders dismissing some party or claim."). Although the Second Circuit seems to have suggested that this is a closed list of reviewable orders, see *Medisys Health Network, Inc. v. Local 348-S United Food & Commercial Workers*, 337 F.3d 119, 123 (2d Cir. 2003), we see nothing in the Supreme Court's decisions that would justify such a restrictive rule. Nor, apparently, did the Fifth Circuit, which as we have just noted, relied on *Waco* to find appellate jurisdiction over an order denying an appeal from

a bankruptcy court's order reinstating state court litigation. *Adams*, 809 F.2d at 1188.

The difficult question is whether the order for which review is sought precedes "in logic and in fact" the remand order. See *Nutter*, 4 F.3d at 321 ("Which portions of a remand order are severable is not entirely clear . . . ."). Neither of our prior cases applying *Waco* has elaborated upon this requirement beyond suggesting that the preceding order must be one involving a "decision on the merits of a removed case." See *J.O.*, 909 F.2d at 271. Other circuits have held that an order qualifies as prior "in logic and in fact" only when it is not "inextricably intertwined with" or "essential to" the decision to remand, *Christopher*, 240 F.3d at 99, or when it is "conclusive on the [substantive] rights of the parties," *Nutter*, 4 F.3d at 321, but *cf. Aquamar*, 179 F.3d at 1286 ("Unlike the 'matter of substantive law exception' to section 1447(d), which allows courts of appeals to review only those remand orders that are based on substantive determinations of law, the *Waco* doctrine allows us to review a district court's jurisdictional determinations.").

Voest naturally insists that the court's order withdrawing the reference was prior "in logic and in fact" to its remand decision, because "without the order the judge would not have had the case to remand in the first instance." Voest further argues that the withdrawal of the reference "was separable from the remand, because it was based solely on the district court's finding of 'cause' pursuant to 28 U.S.C. § 157(d)," and therefore was "completely unrelated to the statutory 'equitable grounds' upon which the district judge based her remand order." In evaluating Voest's position, we need not decide whether the order withdrawing the reference is indeed prior in logic and fact to the remand order. Even if Voest convinced us that it was, and thus that § 1452(b) does not *ban* appellate jurisdiction, it must still find an affirmative authorization that allows this court to

hear the case. We turn, therefore, to Good's arguments under § 1291.

**B**

As Voest acknowledges, the district judge's order with-drawing the reference is not a final order in the sense that it ends the litigation. Indeed, we have consistently held that an order withdrawing the reference is interlocutory and thus unreviewable until after a judgment has issued. See *Matter of McGaughey*, 24 F.3d 904, 908 (7th Cir. 1994) ("Since the order granting a motion to withdraw is not a final judgment, this court lacks jurisdiction to review that order at this point in the litigation."); *In re Pruitt*, 910 F.2d 1160, 1166 (3d Cir. 1990) (noting that "[a]t least five courts of appeals have held that decisions to grant or deny motions for withdrawal of the reference are interlocutory rather than final"). This is undoubtedly why Voest began its quest for appellate review with a motion asking the district court to certify its order withdrawing the reference for interlocu-tory appeal under 28 U.S.C. § 1292(b).

*Waco* is of no use to Voest here, as *Waco* itself made clear that the order for which appellate review is sought must independently be reviewable. See *Waco*, 293 U.S. at 143 (providing that the order to be reviewed must be "conclusive upon the petitioner"); *Carr*, 17 F.3d at 675 (holding that a "court cannot prevent appellate review of a *final* collateral order by contemporaneously remanding a case to state court," but noting that the order to be reviewed "must satisfy [the] two separate jurisdictional requirements" imposed by § 1447(d) and § 1291 (emphasis in original)); *Powers v. Southland Corp.*, 4 F.3d 223, 230 (3d Cir. 1993) (explaining that, although under the *Waco* doctrine "the appeal is not barred by 28 U.S.C. § 1447(d), we still must determine whether the district court's decision is a 'final decision' within the meaning of 28 U.S.C. § 1291").

Although it is plain that the controversy between Voest and Good has not come to a definitive conclusion in the trial courts, Voest claims that it can receive appellate review of the order withdrawing the reference under the collateral order doctrine established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). The Supreme Court described that doctrine as follows in *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985):

> The collateral order doctrine is a narrow exception [to § 1291], whose reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal. To fall within the exception, an order must at a minimum satisfy three conditions: It must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.

*Id.* at 430-31 (internal citations and quotation marks omitted). There is no doubt that the court's order withdrawing the reference satisfies the first and second conditions. It conclusively determined the question whether the bankruptcy court could retain the case over Good's objection, given the right to a jury trial, and that question was distinct from the merits of the underlying contract and fraud claims. At issue is the third condition, which requires that the order be "effectively unreviewable on appeal from a final judgment." *Id.* at 431. Voest insists that this requirement is satisfied here because "the withdrawal order includes an order of remand," and hence the withdrawal order is "effectively unreviewable." Voest acknowledges, however, as it must, that we previously have found that § 1291 bars interlocutory review of orders withdrawing a reference precisely because such orders are *not* "effectively unreviewable," given the availability of appellate review after a final judgment is entered. See, *e.g.*, *In re Powelson*, 878 F.2d 976, 979 (7th Cir. 1989). Whether this analysis

changes when a remand order follows on the heels of the withdrawal of the reference appears to be a matter of first impression.

In addressing this issue, we find instructive the Second Circuit's decision in *In re Ben Cooper, Inc.*, 924 F.2d 36 (2d Cir. 1991). As part of its Chapter 11 reorganization plan, Cooper obtained insurance from Insurance Company of the State of Pennsylvania (ICSP). *Id.* at 37. Cooper filed a claim with ICSP after a subsequent fire loss, but ICSP refused to pay; instead it brought a state action alleging misrepresentations by Cooper in its policy application. *Id.* After the bankruptcy court granted its motion to stay the state court proceedings, Cooper sought a declaration in bankruptcy court that ICSP was liable for the fire-related losses. *Id.* ICSP moved for the district court to withdraw the reference and to lift the stay. *Id.* The district court held that Cooper's adversary proceeding was non-core and that ICSP was entitled to a jury trial. *Id.* at 38. It then withdrew the reference, abstained from exercising its jurisdiction, and lifted the stay. *Id.* In justifying its jurisdiction over Cooper's appeal of the withdrawal of the reference, the Second Circuit explained that "had the district court gone no further than to withdraw the reference to the bankruptcy court, that decision would have been interlocutory and not appealable," but because "the interlocutory withdrawal order here merged into the final judgment [it] thus became reviewable." *Id.*

As in *Ben Cooper*, the district court here withdrew the reference from the bankruptcy court and then permitted the state court litigation to proceed. On the surface, this suggests that the Second Circuit's rationale for finding appellate jurisdiction might likewise support the applicability of the collateral order doctrine in the instant case. But on closer examination, we conclude that a dismissal of a federal court proceeding, coupled with relief from a stay of independent state court proceedings, is materially different

from a decision by a district court to remand a removed case back to state court. Nothing stands in the way of reviewing the action on the stay at the same time as the withdrawal order in the former situation, while § 1452(b) must be taken into account in the latter. In *Ben Cooper*, the federal court merely removed an impediment from continuing with the state court case. That order, along with the order of dismissal, fully disposed of the matter before the federal court.

Here (as Voest acknowledges when it argues that § 1452(b) does not prevent us from reviewing the order withdrawing the reference), we have before us two separate orders, one of which it claimed was within the statutory bar and the other of which was not. See *Waco*, 293 U.S. at 143 (permitting review of those district court decisions that "in logic and in fact" precede the subsequent remand orders). But if the withdrawal of the reference is really separate, it is not the *de facto* last word in the case called for by the collateral order doctrine. In *Ben Cooper*, the Second Circuit found that it had jurisdiction because the withdrawal of the reference "merged into" the order lifting the stay on the state court proceedings. Similarly, Voest argues, the order withdrawing the reference is "effectively unreviewable" for purposes of the collateral order doctrine because the "withdrawal order *includes* an order of remand." Voest thus seems to want it both ways, treating the district court's orders withdrawing the reference and remanding the case as distinct for purposes of *Waco* and § 1452(b), but as linked for purposes of the functional finality addressed by the collateral order doctrine.

In the final analysis, Voest's real objection appears to be to the fact that it will have to litigate these claims in state court, not to the fact that they might have been in the district court rather than the bankruptcy court. This is precisely the decision that normally does escape appellate review, because Congress has made the judgment that parties must live with the district court's decision

about the allocation of cases between federal and state courts. If every remand decision could be relabeled as a "collateral order," there would be nothing left of either § 1452(b) or § 1447(d). We therefore conclude that, in these circumstances, the order withdrawing the reference was an interlocutory order, that it was not appealable as a collateral order or otherwise, and that we therefore lack appellate jurisdiction to review it.

**C**

Voest also argues that it is entitled to appellate review of the court's order remanding the breach of contract and constructive fraud claims to the state court, notwithstanding § 1452(b). Our starting point must be with the language of the statute, which reads as follows:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court under section 1254 of this title.

"Read literally this language denies us jurisdiction to review the orders remanding . . . cases to state court regardless of the basis of the orders or the grounds for challenging them." *Matter of United States Brass Corp.*, 110 F.3d 1261, 1265 (7th Cir. 1997). Yet, as we noted earlier, the various qualifications on the rule of nonreviewability that the Supreme Court has recognized in its *Thermtron* line of cases apply to this statute as well. Analogizing to the Supreme Court's treatment of § 1447(d), we have found that a district court's decision to remand a case or claim pursuant to § 1452(b) is unreviewable only when it relies on "any equitable ground" in doing so. See *United States Brass*

*Corp.*, 110 F.3d at 1265-66. In this context, we have said that the term "equitable" means "appropriate." *Hernandez v. Brakegate, Ltd.*, 942 F.2d 1223, 1226 (7th Cir. 1991); see also *Things Remembered*, 516 U.S. at 133 (Ginsburg, J., concurring) (quoting *Hernandez* approvingly and confirming that, in this context, "'equitable' signals that which is reasonable, fair, or appropriate").

In the present case, the district court explained that it was remanding "[b]ecause the case at bar involves claims based entirely on state law, and because the claims fall within 'related to' jurisdiction, remand will have minimal effects on the administration of the bankruptcy. The state court can adequately address the state law issues based on its expertise." In addition, the court noted that the only disadvantage that the parties "will suffer is limited to the shifting forums in which the adjudication of the case has proceeded." These grounds easily come within the wide net cast by the term "equitable." Because the district court relied on the statutory ground for remand, the ban on appellate review also applies here.

## III

For these reasons, we hold that we lack jurisdiction to review either aspect of the district court's order withdrawing the reference from the bankruptcy court and remanding Good's breach of contract and constructive fraud claims to state court. The practical effect of our holding—that the state-law claims will be adjudicated in state court while the bankruptcy action proceeds in federal court—is not particularly unusual or onerous. Both § 1452(b) and § 1334(c) expressly contemplate parallel proceedings in the bankruptcy and state courts. Finally, we note that Heartland's plan of reorganization provides that the bankruptcy court "will retain jurisdiction to determine the allowance of all Claims" and "will have concurrent

jurisdiction with non-bankruptcy courts to effectuate the collection of the Estate Assets." The plan thus makes clear that the final word as to the actual allocation of Heartland's assets, including those to which Voest may be entitled, will be that of the bankruptcy court.

We DISMISS Voest's appeal of the district court's order withdrawing the reference and remanding the state-law claims for want of jurisdiction.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
