In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-3017, 10-3018

TOWNSQUARE MEDIA,
INC., formerly known as
REGENT COMMUNICATIONS, INC.,

*Defendant-Appellant*,

*v.*

ALAN R. BRILL, *et al.*,

*Plaintiffs-Appellees*.

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
Nos. 3:09-cv-00061-, -00062-RLY-WGH—**Richard L. Young**, *Chief Judge*.

ARGUED JANUARY 19, 2011—DECIDED JULY 21, 2011

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*.  This appeal requires us to plumb the mysteries of removal and remand in the context of bankruptcy.

Section 1446(a) of the Judicial Code (Title 28) specifies procedures for removing a case from a state court to a federal district court. Section 1447 specifies procedures

after removal, and in subsection (c) provides that "a motion to remand [a case removed from a state court to a federal district court] on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment [in the removed case] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded [to the state court]."

The next subsection, however, provides that "an order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). As an original matter, this broad rule of nonappealability (with the exception, also in (d), inapplicable to this case, of remands in civil rights cases governed by 28 U.S.C. § 1443) would, one would have thought, make subsection (c) irrelevant to the appealability of a remand. But in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345-46 (1976), overruled on other grounds in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), the Supreme Court held that (c) limits (d): *only* cases remanded under (c) are nonappealable. The only cases remanded under (c) are ones in which either it appears that the district court lacks subject-matter jurisdiction or there was some other "defect" in the removal, though in the latter case a motion to remand the case has to have been made within 30 days after the notice of removal was filed. Only the first ground for remand is relevant in this case because there was no timely motion to remand; so to simplify exposition we'll pretend that only if absence of subject-matter juris-

diction is the ground for remand is the remand order unappealable.

The Supreme Court has adhered to the limiting inter-pretation of subsection (d), most recently in *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862 (2009), despite the evident misgivings of the Justices them-selves, which we'll discuss later.

A further complication is the existence of a separate statute governing removal of bankruptcy cases, 28 U.S.C. § 1452(b), under which this case was removed. But we'll see that this court has held that the limitations in section 1452(b) on appeal are identical to the limitations in section 1447. So if but only if absence of subject-matter jurisdiction was the ground for the remand in this case, the remand is not appealable and we must therefore dismiss the appeal.

Enough, for the moment, about statutes; we need to tell the reader about the case. Alan Brill owned a number of media companies. In 2002 creditors forced several of them into a Chapter 11 bankruptcy. Neither Brill nor Brill's other companies were debtors in the bankruptcy proceeding.

The bankruptcy judge ordered that the radio stations owned by the debtors be auctioned off. See 11 U.S.C. § 363. Brill bid at the auction, but the successful bidder was Regent, as we will refer to the principal appellant despite its change of name (we can ignore the other appellants). The bankruptcy plan was confirmed in 2003. Essentially it was a liquidation, although the bankrupt companies were not dissolved.

Years later Brill (we can ignore his co-plaintiffs—other firms that he owns) sued Regent, along with pre-judgment creditors of the debtors and some of the debtors' lawyers and other professional advisors ("bankruptcy professionals," they are called), in an Indiana state court. The 111-page complaint contained a multiplicity of tort and contract claims. The creditors were alleged to have violated the terms of the bond covenants and by these and other means to have forced the debtors to default on their bonds. The main allegations against the bankruptcy professionals were that they had misused confidential information and encouraged Regent to violate two confidentiality agreements that it had made with Brill. The complaint charged Regent mainly with those violations plus fraud. All claims were based on Indiana law.

The background of the claim against Regent (which is all that remains of Brill's case) was as follows. Before the bankruptcy, Brill had discussed with Regent the possibility of selling his companies' radio stations to it, and as part of the negotiations (never completed) the parties had made an agreement prohibiting Regent from using any information it obtained from Brill in those negotiations in a manner that would harm him or his companies. The sale never went through. But during the bankruptcy Brill discussed with Regent a plan to bid jointly for the debtors' radio stations, and they signed another confidentiality agreement. Brill claims that Regent used information subject to the agreements to outbid him at the auction ordered by the bankruptcy court.

In the order confirming the bankruptcy plan, the bankruptcy judge, consistent with a recommendation in the plan, had forbidden suits against the bankruptcy professionals. (Third-party releases for the protection of bankruptcy professionals are common and, when consensual, unexceptionable. See, e.g., *In re Specialty Equipment Cos.*, 3 F.3d 1043, 1046-47 (7th Cir. 1993).) Those bankruptcy professionals who had been debtors' counsel and whom Brill had sued asked the bankruptcy judge to compel him to comply with the judge's order confirming the plan; he had violated the order by suing them.

The order had also barred anyone but the debtors from pursuing certain litigation against pre-bankruptcy creditors of Brill's companies. Those creditors, upset that he'd included them as defendants in his suit, removed the suit to the bankruptcy court rather than just asking the bankruptcy judge to enforce compliance with his order as the bankruptcy professionals had done. The creditors based removal on 28 U.S.C. § 1452(a), which authorizes removal to a district court of any claim of which that court would have jurisdiction under 28 U.S.C. § 1334, which confers on the district courts original jurisdiction "of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." §§ 1334(a), (b). Although section 1452(a) provides for removal to the district court rather than to the bankruptcy court, Bankruptcy Rule 9027, buttressed by standing orders in the district courts (including the district court for the Southern District of Indiana), transfers removed suits from district court to bankruptcy court. *In re Seven Fields Development Corp.*, 505 F.3d 237, 246-

47 and 247 n. 8 (3d Cir. 2007); see also William L. Norton, Jr., *Norton Bankruptcy Law and Practice* § 7:1 (3d ed. 2011).

Regent didn't sign the petition for removal. For cases governed by 28 U.S.C. § 1441(a)—the general statute authorizing removal from state courts to federal district courts of cases presenting claims arising under state law—all defendants must consent for removal to be effective. *Hanrick v. Hanrick*, 153 U.S. 192, 196 (1894); *Pettitt v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010). That would not be a problem in this case; Regent indicated its consent shortly after removal, and no objection to its failure to have signed the petition to remove was made— and without a timely objection to the lack of unanimity the defect would not be fatal. 28 U.S.C. § 1447(c); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003); *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203-04 (4th Cir. 2006); cf. *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 942 (9th Cir. 2006). But in any event section 1452(a) authorizes removal by "a party" (in contrast to section 1441(a), which authorizes removal by "the defendant or the defendants"—the plural being the basis for the requirement of unanimity), and so has been interpreted to reject the requirement of unanimity. *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004); *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir. 1985). By making it easier to remove a bankruptcy case, this interpretation promotes judicial economy by concentrating bankruptcy litigation in the bankruptcy courts.

So the case was properly removed. The bankruptcy judge quickly determined that the suit against the bank-

ruptcy professionals was barred. But by then Brill had already dismissed them from his suit, so the judge merely ordered him not to reinstate them.

The judge stayed the suit while reserving decision on the issues raised by the other defendants. Brill then filed an amended complaint (actually a second amended complaint, but we'll suppress that detail and pretend there were only two complaints), eliminating all defendants except Regent and making clear that his only claims arose from Regent's alleged violations of the confidentiality agreements. The bankruptcy judge ruled that, as thus amended, Brill's complaint was unrelated to the bankruptcy and that the bankruptcy court had no jurisdiction over it, so the judge ordered the suit remanded to the state court.

Preferring to defend against Brill's suit in the bankruptcy court rather than in an Indiana state court, Regent appealed the remand order to the district court. 28 U.S.C. § 158(a)(1). The district judge affirmed, saying that "once the bankruptcy court determined that the [amended complaint] was in play and that, based on the claims now alleged by Brill . . . , it had no jurisdiction, . . . no action other than the remand of Brill's Lawsuit could be taken. Once a court determines that it lacks jurisdiction, it lacks the ability to do anything more than announce the fact and rid itself of the cause" (citations omitted). Regent appeals from the district court's decision.

The bankruptcy court had jurisdiction over Brill's first complaint. Although he'd already dismissed the professionals, the pre-judgment creditors remained as

defendants along with Regent. The suit was therefore within the bankruptcy court's jurisdiction. For by suing those creditors Brill was challenging the bankruptcy court's confirmation of the plan of liquidation, and a bankruptcy court has jurisdiction over challenges to its orders whatever their basis. *Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009); *In re Millenium Seacarriers, Inc.,* 458 F.3d 92, 95 (2d Cir. 2006) (per curiam); *In re Allegheny Health, Education & Research Foundation*, 383 F.3d 169, 176 (3d Cir. 2004); *In re Eveleth Mines, LLC*, 318 B.R. 682, 687 (8th Cir. BAP 2004).

And once a district court acquires jurisdiction over a claim, it acquires jurisdiction ("supplemental jurisdiction") over closely related claims even if they are based on state law. 28 U.S.C. § 1367(a). One might think that the bankruptcy court, being a "unit of the district court," 28 U.S.C. § 151, would have the same supplemental jurisdiction as the district court rather than that closely related claims would have to be split between the two courts, especially since Congress has given the district courts (including therefore bankruptcy courts) jurisdiction over proceedings "related to" bankruptcy. 28 U.S.C. § 1334(b); see *In re Sasson*, 424 F.3d 864, 868-69 (9th Cir. 2005). But 28 U.S.C. § 157(c)(1) withholds authority from the bankruptcy judge to make the decision in a "related to" case; he can only recommend a decision to the district court. It would be odd to think a bankruptcy judge could do more in the case of a supplemental state-law claim. And bankruptcy judges are awfully busy (in the year ending on March 31, 2011, there were more than 1.5 million bankruptcy filings in the United States, "Bankruptcy Statistics," www.uscourts.gov/Statistics/

BankruptcyStatistics.aspx (visited July 5, 2011), and only about 350 bankruptcy judges); they shouldn't be bothered with resolving claims that bear only remotely on the bankruptcy proceeding, as in the case of Brill's claim against Regent arising out of the confidentiality agreements.

The few courts of appeals to have addressed the issue are divided over whether bankruptcy courts have supplemental jurisdiction. Compare *In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994), with *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007), and *In re Walker*, 51 F.3d 562, 571-73 (5th Cir. 1995). The bankruptcy courts are also divided. See cases cited in *In re Kebe*, 444 B.R. 871, 879-80 (Bankr. S.D. Ohio 2011); also Eric C. Surette, "Exercise of Supplemental Jurisdiction by Bankruptcy Courts Pursuant to 28 U.S.C.A. § 1367," 52 *A.L.R. Fed. 2d* 243 (2011); Ralph Brubaker, "On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory," 41 *Wm. & Mary L. Rev.* 743, 926-33 (2000); Susan Block-Lieb, "The Case against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis," 62 *Fordham L. Rev.* 721 (1994). Our court has not taken sides, and we needn't do so in this case because it would not affect the outcome; we'll merely assume that the bankruptcy court could have exercised supplemental jurisdiction over the state-law claims, at least to the extent of recommending a decision. But we note parenthetically the oddity that the cases that permit bankruptcy judges to exercise supplemental jurisdiction allow them to make and not just recommend the decision resolving the supplemental claim. This is

inconsistent with the statutory treatment of "related to" jurisdiction (and why should supplemental jurisdiction be broader?) and is in tension with the Supreme Court's reluctance to allow bankruptcy judges dispositive authority over state-law claims. *Stern v. Marshall*, No. 10-179, 2011 WL 2472792, at *15-17, 19 (U.S. June 23, 2011); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83-84 (1982) (plurality opinion); Block-Lieb, *supra*, 62 *Fordham L. Rev.* at 793-96. But that's another issue we need not resolve.

Often, as in this case, the federal claim is resolved one way or another while the supplemental state-law claims are pending, unresolved. That does not eliminate the district court's jurisdiction over those claims, but it does make it an attractive case for the court, in the exercise of discretion conferred by section 1367, to relinquish its jurisdiction over them to the state courts, especially if the federal claim has, as in this case, been resolved without a trial. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 and n. 7 (1988); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500-01 (7th Cir. 1999).

The Supreme Court's decision in *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, *supra*, holds, repeating earlier decisions, that relinquishing jurisdiction presupposes jurisdiction, so that while a decision to remand for lack of jurisdiction is unreviewable by virtue of 28 U.S.C. § 1447(d), a decision to relinquish supplemental jurisdiction is reviewable. This creates an anomaly, as pointed out in Justice Breyer's concurring opinion in *Carlsbad*. 129 S. Ct. at 1869-70. A supplemental claim by definition

has no independent basis for the assertion of federal jurisdiction: it neither is based on federal law nor is made by or against a citizen of another state or a foreign country. It is allowed to be litigated (in the district court's discretion) in federal court purely as a matter of judicial economy, because it is connected to a federal claim pending in a federal court. But if it were erroneously remanded to a state court—erroneously because there were compelling reasons of judicial economy for retaining the case in federal court—still the harm to federal law and the federal judiciary would be slight, although overall judicial efficiency would be impaired. It doesn't make much sense for such a remand to be appealable, when remanding a case to a state court in violation of a federal statute is not appealable if the district court "relied upon a ground that is colorably characterized as subject-matter jurisdiction." *Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 234 (2007). The riposte that relinquishing jurisdiction presupposes jurisdiction—which is the rule—is semantically correct but reveals the limitations of literalism as a method of legal interpretation.

Apparently the Justices have qualms about the rule. A footnote in the *Carlsbad* opinion states that the Court will "not revisit today whether *Thermtron* was correctly decided," because "neither the brief for petitioner nor the brief for respondents explicitly asked the Court to do so here." 129 S. Ct. 1866 n. *. The Court added that the parties to the Court's previous post-*Thermtron* decisions had likewise not asked that it be overruled. *Id*. Had they asked, the Court might have obliged, for it said it

wouldn't revisit the *Thermtron* decision *today*. Four Justices indicated in concurring opinions in *Carlsbad* their disquiet with *Thermtron* and none defended the decision. And Justice Rehnquist's dissent in *Thermtron*, see 423 U.S. at 353-61, has never been satisfactorily answered. He said that "according to the Court, this case is beyond the reach of § 1447(d) by virtue of the fact that respondent appears to have expressly premised his remand of the case before him on a ground not authorized by Congress, a conclusion purportedly drawn from the face of respondent's order. I may agree, *arguendo*, that an order of remand based upon the clogged docket of the district court and a desire to obtain for the parties a trial in some forum without unreasonable delay, however salutary the motivation behind it, is not within the discretion placed in district courts by Congress. But I fail to see how such an order of remand is any more unauthorized than one where the district court erroneously concludes that an action was removed 'improvidently and without jurisdiction.' Surely such an error equally contravenes congressional intent to extend a 'right' of removal to those within the statute's terms." 423 U.S. at 356.

The norm that the Court does not overrule a decision unless asked to do so is another anomaly. (The norm is echoed in Justice Scalia's concurring opinion in *Carlsbad*, 129 S. Ct. at 1868—and then he states his disagreement with *Thermtron* in strong terms. See *id*. at 1868-69.) Fortunately it is not followed consistently, a famous example being the overruling of *Swift v. Tyson*, 41 U.S. (16 Pet.) 1 (1842), by *Erie Railroad Co. v. Tompkins*, 304

U.S. 64 (1938). It's a questionable norm because lawyers are reluctant to ask a court to overrule one of its decisions—let alone a string of them—because it smacks of desperation ("I can win only if you admit that your previous decisions were wrong").

Even so, a plaintiff's abandoning his federal claim, as Brill did when he filed the amended complaint dropping all defendants except Regent, ordinarily requires dismissal of the entire case, including the supplemental claims, *Rockwell International Corp. v. United States*, 549 U.S. 457, 473-74 (2007); cf. *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992); *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010), for there is no longer a federal hook on which to hang them. But if the case has been removed to federal court and the defendant opposes the remand, as in this case, dismissal is no longer mandatory—that is the "forum manipulation" exception recognized in *Rockwell International*, see 549 U.S. at 474 n. 6; see also *In re Burlington Northern Santa Fe Ry.*, 606 F.3d 379, 380-81 (7th Cir. 2010) (per curiam). For then it is a case not just of the plaintiff's abandoning his federal claims but of his seeking to deprive the defendant of the opportunity to defend the remaining claims in the court that obtained jurisdiction of the case on the defendant's initiative. That is called pulling the rug out from under your adversary's feet.

That argument was not considered by the bankruptcy court, however. Regent had failed to argue to that court or for that matter to the district court that the amended

complaint was within the supplemental jurisdiction, and it compounded the forfeiture by failing to argue the point to us in its opening brief, though it argued it very fully in its reply brief. The case for the bankruptcy court's retaining jurisdiction over the supplemental claims was in any event weak. The claims were only tenuously related to the bankruptcy. From the bankruptcy court's perspective the important thing was to get as much for the creditors from the sale of the debtors' assets as possible, and there is no evidence that Regent's outbidding Brill at the auction disserved the creditors. The bankruptcy judge's familiarity with the bankruptcy was unlikely to yield such insights into Brill's claims—based as they were on agreements that had not been submitted in the bankruptcy proceeding—as would have argued for the bankruptcy judge's deciding their merits himself rather than letting the state court decide.

Regent resisted remand on the ground that the plaintiff's suit was within the bankruptcy court's jurisdiction even after the other defendants were dropped. It argued that the suit challenged that court's orders approving the sale of debtors' assets and was therefore an impermissible collateral attack. Regent was wrong. Brill's suit does not claim that the auction had been conducted improperly, and so it does not contradict the bankruptcy court's approval of the sale. The bankruptcy judge determined that the auction had not been collusive and that the winner, Regent, was a good-faith purchaser. Brill bows to that ruling. His brief states that he "is not seeking to appeal, overturn or undo the ruling by the Bankruptcy Court

that Regent was a winning bidder at the Auction or any other Bankruptcy Court order or ruling entered in connection with the Auction, or otherwise," that he "does not seek the transfer of any assets that were ever part of the Bankruptcy Estate," and that "neither [his] claims nor the relief sought thereby will have any impact on the validity or finality of the Sale." He just wants damages. Cf. *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011).

Yet if his claims against Regent were within the supplemental jurisdiction of the bankruptcy court, even if no one mentioned this, the court had jurisdiction. If a complaint is filed in (or removed to) a federal district court, and it includes state-law as well as federal claims, it doesn't have to cite 28 U.S.C. § 1367 to invoke supplemental jurisdiction; that can be assumed—why would the state-law claims be included in the complaint if the plaintiff didn't want the court to decide them? Cf. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1491-92 (7th Cir. 1996); *Lewis v. Local Union No. 100 of Laborers' International Union of North America, AFL-CIO*, 750 F.2d 1368, 1375 n. 7 (7th Cir. 1984).

In the *Powerex* case, cited earlier, having entertained the possibility that "§ 1447(d) permits appellate review of a district-court remand order that dresses in jurisdictional clothing a patently nonjurisdictional ground," 551 U.S. at 234, the Supreme Court considered whether the remand order might have rested on a decision by the district court not to exercise supplemental jurisdiction. But it found "no reason to believe that the District

Court's remand was actually based on this unexplained discretionary decision. The District Court itself *never mentioned* the possibility of supplemental jurisdiction . . . . To the contrary, . . . it relied upon lack of subject-matter jurisdiction," and "it does not appear from the record that petitioner ever even argued to the District Court that supplemental jurisdiction was a basis for retaining the claims against it." 551 U.S. at 235 (emphasis in original). The quoted passage could mean that if no one mentioned supplemental jurisdiction to the court the remand must have been based on a decision to deny jurisdiction, not relinquish it. Still, to withstand appellate review, dismissal for want of jurisdiction must be at least colorable. Was it in this case, in light of *Carlsbad*? Isn't *Carlsbad*, decided after *Powerex*, clear that relinquishing jurisdiction over supplemental state-law claims is not a denial of jurisdiction?

And the district court didn't say *it* lacked jurisdiction; for it did not dismiss Regent's appeal—it affirmed the bankruptcy judge's order dismissing the supplemental claims. This may seem a quibble, since the remand was ordered by the bankruptcy court, a division of the district court. But it could be more than a quibble. Remember that Brill's case was removed under 28 U.S.C. § 1452, and that statute, differently worded from section 1447, authorizes the district court to remand a removed case "on any equitable ground" and adds that if it does so, its remand order is not appealable. § 1452(b).

The Supreme Court has held that section 1452(b) does not displace section 1447(d), and therefore a remand to

a state court of a case removed to a federal district court (or to a bankruptcy court, directly or, more properly, by reference from the district court) is not appealable if it was based on absence of subject-matter jurisdiction. *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128-29 (1995). But section 1452(b) may have added additional impediments to appeal of remand orders by making a remand of a bankruptcy case nonappealable if it was based "on any equitable ground." A bankruptcy judge who remands a case because he is relinquishing rather than denying federal jurisdiction could be thought to have based the remand on an "equitable ground." So two Justices suggested, concurring in *Things Remembered*, when they said that section 1452(b) enlarges the grounds for remanding—and remember that the statute is explicit that no remand under that subsection is appealable. 516 U.S. at 131-36; see also *Hernandez v. Brakegate, Ltd.*, 942 F.2d 1223 (7th Cir. 1991); *In re United States Brass Corp.*, 110 F.3d 1261, 1265-66 (7th Cir. 1997).

In *Good v. Voest-Alpine Industries, Inc.*, 398 F.3d 918, 922-23, 927 (7th Cir. 2005), however, we held that section 1452(b) was not intended to eliminate any of the exceptions to nonappealability that the Supreme Court had recognized in interpreting section 1447(d)—including the exception for cases in which a district court declines to exercise supplemental jurisdiction. And so if that's a proper characterization of what the bankruptcy judge, seconded by the district judge, did in this case, the decision is reviewable.

Of course the bankruptcy judge was explicit that he was dismissing the supplemental claims for want of

subject-matter jurisdiction. If that ground for dismissal was colorable, yet incorrect, the dismissal is not reviewable. But could it be thought colorable, given the recent reaffirmation in *Carlsbad* of the rule that relinquishing jurisdiction over a supplemental claim is not a dismissal for want of jurisdiction?

That depends on what "colorable" means in this context. It could mean, as just suggested, that absence of subject-matter jurisdiction must be at least arguable. Or it could mean that what must be arguable is that the district judge's ground for dismissal was indeed absence of subject-matter jurisdiction, no matter how great a mistake the judge had made in thinking so. *Powerex* implies the first position, as does *Atlantic National Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 937-38, 940 (9th Cir. 2010). But *Kircher v. Putnam Funds Trust,* 547 U.S. 633 (2006), which was not overruled by *Powerex*, embraces the second, remarking that "the District Court said that it was remanding for lack of jurisdiction, an unreviewable ground, and even if it is permissible to look beyond the court's own label [in a footnote, *id.* at 641 n. 9, the Court left open whether that was permissible], the orders are unmistakably premised on the view that . . . the court had no subject-matter jurisdiction . . . . And '[w]here the order is based on one of the [grounds enumerated in 28 U.S.C. § 1447(c)], review is unavailable no matter how plain the legal error in ordering the remand.' " *Id.* at 641-42, quoting *Briscoe v. Bell*, 432 U.S. 404, 413-14 n. 13 (1977); see also *Moody v. Great Western Ry.*, 536 F.3d 1158, 1164 (10th Cir. 2008); *Price v. J & H Marsh & McLennan, Inc.*, 493 F.3d 55, 61 (2d Cir. 2007).

And that seems right, as it usually is easier to determine what the district court's (or in this case the bankruptcy court's) ground for dismissing a case was than whether it was not merely an erroneous ground but a frivolous one—and it is certainly easier to determine what the ground was than to determine both what it was *and* whether, if the ground was absence of jurisdiction, it was at least arguably sound.

The word "jurisdiction" is a chameleon, judges do not always use it with precision, and the distinction between relinquishing and disavowing jurisdiction is a fine one. Had Regent argued supplemental jurisdiction to the bankruptcy judge, we might interpret what the judge did as relinquishment rather than disavowal. But as no one mentioned supplemental jurisdiction, it hardly seems likely that the judge, in holding that he lacked jurisdiction, meant that he had jurisdiction but was relinquishing it. Such a characterization of his ruling would not be "colorable." So the remand was indeed unreviewable, and Regent's appeal must therefore be—we conclude at long last—

DISMISSED.